UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

M.V.D., by her parent and natural guardian
ODELMA DIAZ, HABIBULAHI OLOWU, and
CHARLENE MCDUFFIE,

     Plaintiffs,

  vs.

PARK MONROE II REHAB HOUSING
DEVELOPMENT FUND CORP., PARK MONROE
II LLC, SHINDA MANAGEMENT
CORPORATION, THE COMMUNITY
PRESERVATION CORPORATION, CLAUDETTE
HENRY, and EUNICE KING,

     Defendants.

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

---

## <u>PRELIMINARY STATEMENT</u>

1. In violation of their obligation to treat all tenants equally, Defendants Park Monroe II Rehab Housing Development Fund Corp., Park Monroe II LLC, Shinda Management Corporation, The Community Preservation Corporation, Claudette Henry, and Eunice King (collectively, "Defendants"), owners and managers of 1933 Union Street, Brooklyn, NY 11233 ("the Building"), discriminate against tenants with mobility disabilities by failing to provide them stair-free access to their apartments, forcing them to choose between being trapped in their homes or risking physical injury while attempting to use or be carried up and down the stairs.

2. Specifically, Defendants' failure to provide access to the wheelchair lift installed in the lobby of the Building *for the purpose of providing stair-free access to persons with*

*mobility disabilities* deprives tenants with mobility disabilities of the right to enter and exit their apartments safely and at will—a right that all other tenants have.

3. Defendants' failure to keep the Building's two passenger elevators in working order similarly deprives tenants with mobility disabilities of their rights to access their homes on the same terms as all other tenants.

4. M.V.D., by her parent and natural guardian Odelma Diaz, Habibulahi Olowu, and Charlene McDuffie (collectively, "Plaintiffs") are all tenants with disabilities residing at the Building who have been deprived of the freedom to access their homes independently and at will, just like other tenants can.

5. Plaintiff M.V.D. has a disability that requires the use of a wheelchair for mobility. While there is a wheelchair lift on her side of the building from the lobby to the first floor, where her apartment is located, the wheelchair lift has been out of service for over one year. In order to exit and enter her apartment, Plaintiff M.V.D.'s mother must call the superintendent and have him carry Plaintiff M.V.D. up and down the stairs in her wheelchair.

6. Plaintiff Habibulahi Olowu has a disability that requires the use of a wheelchair for mobility. While there is a wheelchair lift on his side of the building from the lobby to the first floor, where the elevator is located, the wheelchair lift has been out of service for over one year. In order to exit and enter his apartment, Plaintiff Olowu must ask the superintendent or family members to carry his wheelchair up and down the stairs while Plaintiff Olowu struggles up and down the stairs in crutches.

7. Plaintiff Charlene McDuffie has a mobility disability and requires the stair-free paths of travel to access her apartment on the sixth floor. While there is a wheelchair lift on her

side of the building from the lobby to the first floor, where the elevator is located, Defendants have refused Ms. McDuffie's requests for a key to the wheelchair lift (although fulfilling such a request now would be useless unless Defendants restore the lift to service). As a result, she suffers significant pain every time she has to use the stairs when entering or leaving the Building. In addition, during elevator outages, which are frequent, Ms. McDuffie is forced to go onto the roof, cross over the roof to the other side of the Building—which is extremely dangerous—and take the elevator on the other side of the Building down to the first floor, and vice versa.

8. Defendants are aware of Plaintiffs' disabilities and need for stair-free paths of travel but have refused to provide them, or to provide alternate accommodations as required under the Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States and 28 U.S.C. § 1343 for actions arising under laws providing for the protection of civil rights. Plaintiffs' state and local law claims are pled pursuant to 28 U.S.C. § 1367 because Plaintiffs' federal, state, and local law claims are related and arise out of a common nucleus of related facts.

10. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and injunctive relief pursuant to 42 U.S.C. § 3613(c) (Fair Housing Act), N.Y. Executive Law § 296 (New York State Human Rights Law) and N.Y.C. Administrative Code § 8-502 (New York City Human Rights Law).

11. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because that is the district in which a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred.

## PARTIES

12. Plaintiff M.V.D. resides at 1933 Union Street, Apartment 1K, Brooklyn, NY 11233 and is a qualified person with a disability under the Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law. Plaintiff M.V.D. is a minor and sues through Odelma Diaz, her parent and natural guardian. She has lived in Apartment 1K for approximately eight years.

13. Plaintiff Habibulahi Olowu resides at 1933 Union Street, Apartment 2G, Brooklyn, NY 11233 and is a qualified person with a disability under the Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law. He has lived in Apartment 2G for approximately nine years.

14. Plaintiff Charlene McDuffie resides at 1933 Union Street, Apartment 6G, Brooklyn, NY 11233 and is a qualified person with a disability under the Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law. She has lived in Apartment 6G for 28 years and has lived in the Building for 35 years.

15. Defendant Park Monroe II Rehab Housing Development Fund Corp. is the registered deedholder of the Building. Defendant Park Monroe II Rehab Housing Development Fund Corp. maintains its principal place of business at 132 Ralph Avenue, Brooklyn, NY 11233.

16. Defendant Park Monroe II LLC is the registered corporate owner of the Subject Building on the New York City Department of Housing, Preservation and Development ("HPD")

website. Defendant Park Monroe II LLC maintains its principal place of business at 132 Ralph Avenue, Brooklyn, NY 11233.

17. Defendant Shinda Management Corporation is the registered managing agent for the Building. Defendant Shinda Management Corporation maintains its principal place of business at 221-10 Jamaica Avenue, Floor 3, Queens Village, NY 11428.

18. Defendant The Community Preservation Corporation is the assignee of Defendants Park Monroe II Rehab Housing Development Fund Corp. and Park Monroe II LLC and has the power and authority to defend, settle or compromise legal proceedings or claims brought against Defendants Park Monroe II Rehab Housing Development Fund Corp. and Park Monroe II LLC that may affect the Building. Defendant The Community Preservation Corporation maintains its principal place of business at 220 East 42nd Street, 16th Floor, New York, NY 10017.

19. Defendant Claudette Henry is the head officer of the Building. Defendant Henry maintains her principal place of business at 221-10 Jamaica Avenue, Floor 3, Queens Village, NY 11428.

20. Defendant Eunice King is the registered managing agent for the Building. Defendant King maintains her principal place of business at 221-10 Jamaica Avenue, Floor 3, Queens Village, NY 11428.

## STATEMENT OF FACTS

21. 1933 Union Street, Brooklyn, NY 11233 was built in or around 1933 and is divided into two sides. On each side of the Building, there is a flight of six stairs leading from the lobby to the first floor. The first floor houses apartments and the elevators for each side of the Building. There is no way to access either of the Building's elevators without ascending to the first floor from the lobby.

22. On the left side of the Building, there is a wheelchair lift next to the flight of stairs between the first floor and the lobby. The wheelchair lift requires the use of a key to operate it. Only the superintendent and two tenants, Plaintiffs M.V.D. and Olowu, have keys to the lift. The lift is currently out of service and has been out of service for over one year.

23. On the right side of the Building, there is no wheelchair lift or other means of stair-free access between the lobby and the first floor.

24. The elevators on each side of the Building frequently go out of service. The New York City Department of Buildings has received at least five complaints about the elevators in the last two years, and at least 74 complaints about the elevators over the last 32 years. When one of the elevators is out of service, the only means tenants have of ascending or descending the Building is using the staircase on either side of the Building, or using the elevator on the other side of the Building—if it works—and crossing over the roof, which is dangerous due to the many tripping hazards on the roof.

**Plaintiff M.V.D.**

25. Plaintiff M.V.D. has used a wheelchair for mobility her entire life and is unable to use stairs. In order to exit the Building from her first-floor apartment, or to enter her first-floor apartment from the lobby of the Building, she must use the wheelchair lift between the lobby and first floor of her side of the Building. Although Plaintiff M.V.D.'s family has the key to the wheelchair lift for Plaintiff M.V.D., the wheelchair lift is currently out of service, and has been out of service for over one year.

26. Plaintiff M.V.D.'s wheelchair weighs over 150 pounds.

27. Plaintiff M.V.D.'s mother, Odelma Diaz, has repeatedly complained to Defendants about the wheelchair lift being out of service but Defendants have failed to do anything to make it operational again.

28. Ms. Diaz most recently called Defendants about the wheelchair lift being out of service on February 5, 2026, and March 5, 2026.

29. On June 2, 2025, Plaintiff M.V.D.'s care coordination assistant at Columbia Children's Complex Care Program called Defendants about the wheelchair lift, and was told that the wheelchair lift was out of service because the insurance on the wheelchair lift was out of date.

30. Plaintiff M.V.D. is a minor and goes to school every day. Because the wheelchair lift is out of service, in order to go to school, Plaintiff M.V.D. must have the Building's superintendent carry her down the stairs in her wheelchair every morning so she can get to the school bus.

31. When the superintendent is unavailable to carry her up and down the stairs, Plaintiff M.V.D. cannot go to school in the morning.

32. When Plaintiff M.V.D. comes home from school in the afternoon, her mother must lift her out of her wheelchair and carry her up the stairs into her apartment while M.V.D.'s home health attendant carries her backpack and feeding tube; then M.V.D.'s mother and home health attendant carry M.V.D.'s wheelchair up the stairs together and into the apartment.

33. According to Plaintiff M.V.D.'s care team at Columbia Children's Complex Care Program, it is dangerous to carry M.V.D. up and down the stairs in her wheelchair because of the significant risk of falling and serious injury.

34. Carrying M.V.D. and her wheelchair up the stairs every day after school has injured Ms. Diaz's back.

35. Plaintiff M.V.D. has missed at least one week of school because she was unable to leave her apartment due to the out-of-service wheelchair lift.

36. Without any means of stair-free access between the first floor and the lobby of the Building, Plaintiff M.V.D. is deprived of the ability to participate in activities outside of her apartment, including school, and is denied equal opportunity to use and enjoy her dwelling on the same terms and conditions as non-disabled tenants.

**<u>Plaintiff Habibulahi Olowu</u>**

37. Plaintiff Habibulahi Olowu has used a wheelchair for mobility since 2014 and moved into the Building specifically because of its wheelchair lift. Although Plaintiff Olowu has the key to the wheelchair lift, the wheelchair lift is currently out of service, and has been out of service for over one year.

38. Plaintiff Olowu has repeatedly complained to the Building's superintendent and the City of New York about the wheelchair lift being out of service but Defendants have failed to do anything to make it operational again.

39. Because the wheelchair lift is out of service, Plaintiff Olowu must use his crutches to walk up and down the stairs between the lobby and the first floor, where the elevator is located, while the superintendent or members of his family carry his wheelchair up and down the stairs. Because Mr. Olowu is forced to walk up and down the stairs, he has developed a leg sore caused by pressure from his leg brace, which he had to replace with a larger leg brace to ease the pressure. However, his leg sore has not healed.

40. When the elevator is out of service, Plaintiff Olowu is forced to use his crutches to walk up and down an additional flight of stairs between his apartment on the second floor and the first floor. The elevator on Plaintiff Olowu's side of the Building was most recently out of service for approximately two days in March 2026.

41. Without any means of stair-free access to and from his apartment, Plaintiff Olowu is at risk of pain and physical injury, and is denied equal opportunity to use and enjoy his dwelling on the same terms and conditions as non-disabled tenants.

**Plaintiff McDuffie**

42. Plaintiff McDuffie has arthritis and is unable to use stairs without significant pain, especially when carrying heavy items like groceries. In or around 2017, she requested a key to the wheelchair lift on the basis of her disability, but was denied. As a result, she is forced to endure pain while using the stairs from the first floor elevator to the lobby, and vice versa.

43. Ms. McDuffie requires the use of the elevator to travel between the first floor of the Building and her sixth-floor apartment. When the elevator is out of service, Ms. McDuffie is forced go onto the roof, cross over the roof to the other side of the Building, and take the elevator on the other side of the Building down to the first floor, and vice versa, often several times per day. Crossing the roof in this manner is dangerous because there are solar panels on the roof that are easy to trip over.

44. Ms. McDuffie most recently had to cross over the roof to use the other side of the Building's elevator to enter her apartment and exit the Building in the summer of 2025.

45. Ms. McDuffie has complained to the Building superintendent about the elevator being out of service many times. Each time, the superintendent tells her that he will inform Defendants, but the elevator remains out of service.

46. Without any means of stair-free access to and from her apartment, Plaintiff McDuffie is at risk of pain and physical injury, and is denied equal opportunity to use and enjoy her dwelling on the same terms and conditions as non-disabled tenants.

## CLAIMS FOR RELIEF

### FIRST CLAIM:
### Disability Discrimination Under the Fair Housing Act

47. Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

48. The Fair Housing Act prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of that person's disability. 42 U.S.C. § 3604(f)(2).

49. The Fair Housing Act also prohibits the refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

50. By refusing to provide Plaintiffs M.V.D., Olowu, and McDuffie stair-free access between the lobby and first floor on both sides of the Building, including by providing a working wheelchair lift on either side, Defendants discriminate against Plaintiffs on the basis of their disabilities.

51. By refusing to provide Plaintiffs Olowu and McDuffie, reliable stair-free access between the first floor and their apartments, including by adequately maintaining the elevators on each side of the Building, Defendants discriminate against Plaintiffs on the basis of their disabilities.

52. Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i), have been injured by Defendants' unlawful, discriminatory conduct, and have suffered damages as a result.

53. Accordingly, pursuant to 42 U.S.C. §§ 3613(a) and (c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

### SECOND CLAIM:
### Disability Discrimination Under the New York State Human Rights Law

54. Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

55. The New York State Human Rights Law prohibits discrimination against any person because of disability in the terms, conditions or privileges of the sale, rental or lease of a housing accommodation or in the furnishing of facilities or services in connection therewith. N.Y. Executive Law § 296(5)(a)(2).

56. By refusing to provide Plaintiffs M.V.D., Olowu, and McDuffie stair-free access between the lobby and first floor on both sides of the Building, including by providing a working wheelchair lift on either side, Defendants discriminate against Plaintiffs on the basis of their disabilities.

57. By refusing to provide Plaintiffs Olowu and McDuffie reliable stair-free access between the first floor and their apartments, including by adequately maintaining the elevators on each side of the Building, Defendants discriminate against Plaintiffs on the basis of their disabilities.

58. Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

59. Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### THIRD CLAIM:
### Disability Discrimination Under the New York City Human Rights Law

60. Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

61. The New York City Human Rights Law prohibits discrimination against any person in the terms, conditions, or privileges of the sale, rental, or lease of any housing accommodation or interest therein, or in the furnishing of facilities or services in connection therewith, on the basis of disability. N.Y.C. Administrative Code § 8-107(5)(1)(b).

62. By refusing to provide Plaintiffs M.V.D., Olowu, and McDuffie, stair-free access between the lobby and first floor on both sides of the Building, including by providing a working wheelchair lift on either side, Defendants discriminate against Plaintiffs on the basis of their disabilities.

63. By refusing to provide Plaintiffs Olowu and McDuffie reliable stair-free access between the first floor and their apartments, including by adequately maintaining the elevators on each side of the Building, Defendants discriminate against Plaintiffs on the basis of their disabilities.

64. Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

65. Accordingly, pursuant to New York City Administrative Code §§ 8-502(a) and 8502(f), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief and such other remedies as may be appropriate, and attorneys' fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court issue an order and judgment as follows:

1) Declaring that Defendants' failure to provide stair-free access to Plaintiffs violates:

   a. The Fair Housing Act, 42 U.S.C. § 3604, *et seq.*;

   b. The New York State Human Rights Law, N.Y. Executive Law § 296;

   c. The New York City Human Rights Law, N.Y.C. Administrative Code § 8-107;

2) Issuing a permanent injunction prohibiting Defendants from discriminating on the basis of Plaintiffs' disabilities, including by:

   a. Requiring Defendants to repair the wheelchair lift on the left side of the Building;

   b. Requiring Defendants to provide a key to the wheelchair lift to Plaintiff McDuffie; and

   c. Requiring Defendants to adequately maintain the elevators on each side of the Building and to promptly provide alternate means of stair-free access between all floors of the Building during elevator outages.

3) Awarding Plaintiffs damages for the injuries and expenses incurred as a result of the preceding violations;

4) Awarding attorneys' fees and court costs pursuant to 42 U.S.C. § 3613(c) and the New York City and New York State Human Rights Laws;

5) Granting such further and other relief as this Court deems just and proper.

Dated:  June 9, 2026
       New York, NY

                                          Respectfully submitted,

                                          <u>S/ Madeleine Reichman</u>
                                          Madeleine Reichman
                                          Pavita Krishnaswamy
                                          The Legal Aid Society
                                          49 Thomas Street, 5th Floor
                                          New York, NY 10013
                                          Tel.: (929) 638-0493
                                          mreichman@legal-aid.org
                                          pkrishnaswamy@legal-aid.org

                                          Yaniv Kot
                                          The Legal Aid Society
                                          111 Livingston Street, 7th Floor
                                          Brooklyn, NY 11201
                                          Tel.: (929) 656-0214
                                          ykot@legal-aid.org

                                          ***Attorneys for Plaintiffs***